Our second case in the morning is the people of the state of Illinois versus the 2008 Dodge Challenger. For the appellant, Mr. Martinkus. For the appellee, Ms. Johnson. You may proceed. Thank you. Good morning, Your Honor. May it please the Court, Counsel. I'm here on behalf of Cynthia Brown. Cynthia Brown's car was taken by the state pursuant to a forfeiture proceeding. One thing I learned 40-plus years ago in law school is that forfeitures are a court, and if you have a forfeiture statute at issue, it's to be strictly construed. The first issue we've raised is whether or not the state proved its case. And at trial, the case was about Mr. Keon Clark, whether or not he committed a violation which would subject his car to forfeiture. The issue was whether or not he was driving on a revoked license. There's no issue on that. The second issue is whether or not this was on a public highway. At trial, there was evidence introduced that he was driving a vehicle near Main and Logan Street, and there was never any issue or question raised with respect to whether or not this was a public highway. The state could have easily asked the officer on the witness stand, is this a public highway within the state of Illinois? The state failed to do that. The state could have asked the court to take judicial notice. The court could have asked the court to take judicial notice that the streets of Logan and Main Street in the city of Danville are public highways. That was never done. It's not the burden of the claimant to make the case. It's not the duty of the court, the trial court, to take an active role to try to make the state's case. In this particular instance, when the motion for directed verdict was made, that's when the state, sua sponte, without being asked to by the state on its own accord, after the evidence had been closed, without any prior warning or notice to Mrs. Brown, then the state articulated that it would take what would effectively be judicial notice that Main Street was a public highway. And I don't think that that is permissible. I've listed a lot of different cases in the briefs that basically hold that a trial court is not supposed to, on its own, very rarely, take judicial notice. This is a case where the court took judicial notice of an element of the offense without being asked to do so after the close of the state's case. So that's the first issue that we ask that you look to. If you believe, as I think the evidence shows, that an element of the state's case was not approved at trial, then I don't think you go any further. If you believe that, in fact, the court was proper in sua sponte taking judicial notice, then we move to the second issue. The people in this brief, some may ask you, as appellate judges, to take judicial notice of these facts. I don't think that's appropriate in any fashion. You can't take judicial notice of a fact that was missing at trial and somehow put that fact into evidence and then support the state's case. I don't think that's the role of the appellate court at all. So I'm not going to address that very much, but I would certainly ask that you don't take judicial notice for the prospect of fulfilling one of the elements in the state's case. If you move past that issue, then you have to ask yourself, well, what, in fact, happened at trial? Did Mrs. Brown, then, show that she did not know that her son was going to, or had reason to know, that her son was going to commit a crime? And in this particular instance, I think you look at the statute. The statute talks about two different classes of people who have the right or standing to bring the action. The owner of the vehicle or any person whose right, title, or interest is of record. And in the brief, I quoted to Dugan. Dugan was a Second District case, which at that time pretty well said, well, if the owner really knew about it, then we don't really look at the knowledge of the certificate holder. But Dugan has overruled. In 1991, Chevy Camaro, another Second District case, says, no, we didn't mean that. We didn't mean to read Dugan broadly in that fashion. The interests of the title holder are separate, and you can't just impute knowledge that the owner of the vehicle – because in this case, I think, the trial court deemed Mr. Clark to be the true owner of the vehicle. But that doesn't end the inquiry. The inquiry still is whether the title holder, the certificate of title of record, that holder has knowledge that should be imputed to her. And that's really the issue from my perspective. You look at the statute, the statute is disjunctive. It's not conjunctive. It sets forth two different classes of individuals who have standing to bring the case. And I think the other really interesting language in the statute is that the claimant did not know or did not have reason to know that the vehicle was to be used in the commission of such an offense. And the reason I point that out, Your Honor, is that if you look at the trial court's ruling, the trial court basically made its finding on the proposition that, well, she certainly would or could have known that possession of the vehicle with one of his friends could result in P.M. Clark at some point, maybe in the future. Maybe getting the keys and driving. I don't think that the mere possibility that someone could commit a crime in the future, without specificity, is what's really contemplated by the statute. I think the statute is designed to say, look, if you're asked, if Keehan asks you to give you the keys to the car and you've given the keys, well, you might argue, I didn't know he was going to drive it. I thought he was just going to go into the car to get his golf clubs. You could make the argument there that now she had imputable knowledge, that if you give him the keys, he could very easily drive the car. Or a friend tells her, hey, Keehan wants to drive, he's going to take a trip to Tennessee, and if she has knowledge of that and then participates, gives him the car, gives him access to the car that's different. You have to really look at this case. This is a case where Cynthia Brown, the mother of Keehan, knows her son's had tremendous problems with the law. He's had an MBA career, but after that he messed up, and he continued to mess up. So she's presented with the car, his car, three years earlier. She puts a title on her name, she insures it, she gasses it. She takes and does those sorts of things that one, in fact, should reasonably do. She knows that her son doesn't have a vehicle. She has a vehicle that she lets his friends drive, very specifically. They go golfing. Officer Millis testifies that in the three years that he was, prior to him working as an officer, he was at the golf course, and he would see Keehan come with his friends in his vehicle. He never drove. All his friends would drive, and Keehan was always in the passenger seat. So, you know, what is the mother supposed to do here? She is in a position where she is doing everything she can to try to prevent Keehan from breaking the law. She's not asking, she's not putting Keehan in the position to do it. She's trying to take steps to avoid that situation. So, I mean, that I think is really the crux of this case. When you look at all the facts here, are there indicia of ownership? There absolutely are indicia of ownership in Cynthia Brown. Now, I don't know what more she really could have done. The mere fact that her son kept his golf clubs in the car is not indicative of anything. There's cases that talk about that, but in this case, that was the setup to prevent him from driving. Let his friends drive his vehicle. They don't keep his golf clubs in the car. The fact that there was an insignia or something on the car, a tree, a nickname, that again doesn't bear anything with respect to whether or not she knew that in this one day, Keehan wasn't driving the vehicle, who had no, there's no knowledge of people to her based upon the facts in this case. There was nothing presented in this record that said she should have known. The mere fact that the trial court says, well, you know, it's possible that at some point one of his friends might have let him drive. That's not the sort of imputable knowledge that defeats someone's interest in a car. And I think that's real important to really look at that. I think there's a huge difference between having knowledge of an event about to happen. And that's what the statute says. It doesn't say somehow peripherally, well, if it could happen in the future and you don't take all the steps in the world to prevent it, then you lose your vehicle. That's not what the statute says. So I don't have a long argument here because I think that the facts of the case are relatively straightforward. Counsel, let me ask you, does it matter that it came out in the evidence that she knew he had four or five prior driving license revoked? That's a really interesting question. I thought of that myself. Yeah, I mean, look, if she would have done things to put him in access to the vehicle to actually make it very readily apparent he's likely to do it. But in this case, there had been nothing in three years that she was aware of that he was driving. The mere fact that she had a vehicle that she permitted his friends to use to transport him, I think that's a big jump, Judge. I really do. I don't think the mere fact that my kid has had some problems with the law automatically means, well, that I can't ever do anything that could conceivably result in him taking steps to violate the law. I don't think it goes that far, and it shouldn't. Because again, this is a forfeiture. This isn't a car that Cynthia Brown had. This is a car that was hers. And I think there's a huge difference between someone participating, knowing that this is going to be used in a bank robbery, knowing that your kid's using your car to go buy drugs, and a case like this where she had no reason. Kian, out of the blue, had a psychotic episode and goes and drives the car. And that's what happened in this case. I know because I represented Kian in some of his criminal matters. This is not a situation where all of a sudden, in the normal course of how she was doing these things, he was going to drive. This is a one-time event where he goes and does whatever he does and drives his vehicle. And there's no reason for the trial court to have assumed that she should have done something different. The mere fact that he has had a criminal record and that he's done some things in the past, I don't think, automatically says, well, then you should know that at some point in the future, he's going to commit another crime. I think it has to be much more specific. I really do. Otherwise, the forfeiture statute is so generic that, you know, I've got kids, I've got grandkids. I pray to God they don't ever take one of my cars and do anything, because I might be on that same hook. I don't think that that's the case here. I really don't. I think that this was a situation where she was doing everything in her power to try to help her son, to try to keep him out of trouble. And Kian, unfortunately, went ahead and basically screwed his mom out of the car, the way this is right now. Well, does it matter that he had access to the keys? The mere fact that somebody else now would breach and violate the trust she placed in a friend. And again, it's not like this was happening. I mean, you've got years of testimony that Kian's friends were deliberate. They would drive him to the golf course, Kian would get out of the passenger side of the car, the friends would drive. And that's where the officers testified to there. So why would she, Mrs. Brown, really have any real reason to think all of a sudden these friends who she trusted, who put faith in, would automatically give Kian the keys? I don't think it ever even came out how exactly he got the keys on this thing, what he did, if he stole them or what. So I think that in this instance, this is very, very different than someone who participates and permits a felon to get in a car, you give him the keys, you know he's going to do it, okay, and don't say anything, be careful, I'm giving you the keys here, you know, don't get caught. I think it's a very different case. And I think, look, this is a piece of property that Mrs. Brown had and really owned for three plus years. And should the state be able to simply disgorge her from that? Because in theory, Kian could, in the future, commit a crime. I don't think so, I really don't. Thank you very much. Good morning, may I please the court? I will pick up where you left off. Several times it was said, what more could she have done, what more could she have done? Well, she could have kept the keys, she could have not given them to friends that, according to the record, she couldn't even identify by name. She said there were four to five or several people that she would allow to drive around the car. She couldn't identify them by name. That seems to suggest some haphazard control of her car and some haphazard concern over whether Kian would not get access to them. She's handing keys to people she doesn't even know by name. Suggesting that this was a psychotic event that caused him to drive on this occasion, then he must have repeated psychotic events. Is there any evidence in the record of that? Of a psychotic event? Absolutely not. Just wondering where that came from because I didn't see it. Counsel, and I understand you're picking up from where Mr. Martinkus left off, but I'd like to ask you more about the statutory element of this having occurred on a public highway. What is in the record in terms of testimony or evidence as to the location of where this occurred? The record, the testimony was that he was stopped at Logan and Main Street in Danville. Okay, and it was Deputy Norton that provided that testimony, is that right? Yes, sir. And it was more, just reading between the lines, it seems like the battle lines were drawn not as to whether or not he had committed an offense, but it was as to the ownership issue and that's really where things were going to play out at trial. Because in terms of establishing that element of the forfeiture action, it was actually just in a preliminary lead-in question that was asked by the State where Deputy Norton's on the stand and the State asked, I want to direct your attention to May 28th of this year, did you stop a vehicle that Keyon Clark was driving here in Danville? Norton says yes, sir, and was that on West Main Street and Logan Avenue? Yes. That's the extent of the evidence establishing where this occurred, is that right? That is correct. And there is no testimony establishing that either West Main Street or Logan Avenue are public highways, is that fair? That is fair. And the trial court did, sua sponte, identify Main Street Route 150 as a public street, is that right? Correct. Do we know whether or not Main Street is the same as West Main Street? Yes. Well, okay, based on the record, no, that wasn't specifically stated. But it was understood clearly, I mean, no one made the objection that West Main Street wasn't Main Street. Do they have to? I don't believe so on something in directional difference on a street in Danville. Well, we're not talking about direction, we're talking about the actual name of the street. True? True. Okay, and then is there any evidence in the record as to Logan Avenue, as to whether or not it's a public highway? No, there wasn't any testimony to that. And do we know whether or not the offense was committed on Logan Avenue or on West Main Street? Based on the testimony, my reading is it was at that intersection. It was West Main and Logan. And that's based on that question and answer colloquy that I just read to you? Correct. Okay, thank you. What I do want to point out is that today, council just acknowledged the state could have asked the trial court to take judicial notice of the fact that West Main, Main, Logan Street are public highways. So one point with that is there's no argument they are public highways, okay? That's first and foremost. They are public roads. Well, before you go further, and I don't mean to quibble, but we can only deal with what's in the record. Is that right? You can, but judicial notice is a proper recognition of a fact. Are you asking us to take judicial notice, or are you saying that the trial court judicial notice? I believe the trial court took judicial notice, and I believe they properly did so. And again, the second point I was wanting to make is that council today is saying that you could have asked, the state could have asked the trial court to take judicial notice. So again, they're not even arguing at this point that judicial notice isn't proper. Well, the trial court could have declined too at that point. Could have declined, could have reserved, but the trial court, based on common observation, which again, when you look at what facts are proper for judicial notice, it needs to be a fact beyond reasonable dispute. There is no reasonable dispute as to the character of these roads, and a trial judge is allowed to look within his territorial jurisdiction and by common observation take judicial notice of facts that are known. They're also allowed to take judicial notice of facts that are easily verified by sources, again, beyond reasonable dispute. We can verify this by looking at any map, but he didn't say that it was based on a map. He said it was based on basically, I know that that's Route 150, State Route 150, and it's a public highway. It was his observation, which was a proper observation, you know, and he was allowed to take judicial notice of that. I think you'd have a much stronger argument if the testimony was the offense occurred at the intersection of West Main Street and Logan Avenue, and then subsequently the trial court judicial notice that West Main Street and Logan Avenue are public highways, but you don't have the first, and you don't have the second there. What you have is kind of vague testimony about where the offense occurred, and then you have this judicial notice being taken that Main Street Route 150 is a public highway, and that's not really the equivalent of establishing West Main Street and Logan Avenue are public highways, is it? To respond to that, though, this court is allowed to take also judicial notice of public records. Secretary of State publishes maps in this state, Google Maps. Those are all sources beyond reasonable dispute, and at the appellate level, this court... Google Maps are not beyond dispute. Believe it or not, though, there is case law that says... Well, the case law is wrong. I can stick to the Secretary of State's maps, if that will make it easier, that are published maps. They are public records, and this court can recognize them and judicially notice them as well. Maybe on a peripheral fact, but when you're talking about an element of an action here, and in this case, a forfeiture action, that would be a little tough to do. It was done by this court in People v. Hill. And in People v. Hill, the defendant had been charged with an aggravated battery. And what had elevated it from simple battery to aggravated was the fact that it was an assault that... or a battery that happened in the Macon County Jail. The trial court took judicial notice that the Macon County Jail is a public building. By virtue of being a public building, again, it elevated the offense. The defendant said, I don't think it's proper. This court said it is proper, and it doesn't matter that it is an element of the offense. People v. Hill is directly on point, and I know in the reply brief that counsel takes issue with it and says it can be distinguished. And the basis for distinguishing it is argued to be that the defendant there was allowed to put on evidence to try and support his argument that the jail was not a public building. But notably, nothing prevented claimant here from putting on evidence that Logan and Main were not public streets. He still had the right to put on evidence. And in any fair trial, you get to rebut the evidence that is presented against you. Even though, and that's true, even when it is evidence recognized through a judicial notice of the fact, the court noticed this is a public street. If he had evidence to combat it, which let's be honest, he doesn't, he can't, then he still had that opportunity to do so and to convince the court to change its opinion. Well, if he's content with the way the record stood at that time and viewed it as perhaps best to leave it as it was and argued that the state failed to present and prove its prima facie case, it wouldn't have made much sense for him to bring that up during his evidence, would it? No, but it also lends credibility to what the trial court did do. The trial court took judicial notice of the fact that we cannot argue that the streets are public streets. So, while it may not have made sense for his position, that was his calculated risk to allow it to stand that the trial court found, properly so, that these streets are public streets and that case law supported... No, that the streets were public streets. Corrected, yes. ...that Main Street is a public street and allowed that to stand and that was the calculated risk in maybe not presenting evidence if it existed to the contrary. So, are there any other questions on this particular issue? Moving to then the propriety of the forfeiture, the trial court also carefully identified two different ways that it found forfeiture to be appropriate. The first being that Clark was the true owner of the car and then alternatively that the claimant knew or had reason to know. And in Dugan that I cited, it was a Supreme Court case, it was not an appellate court case, where it recognized that sometimes holding title is the equivalent of ownership, but sometimes it simply isn't. And so that it is a fair consideration to look at not just who holds the title but who truly owns the car. And we presented significant evidence that it was Clark who owned the car. He was stopped in the car in 2010. He was stopped obviously again before this occurrence. He helped pay the insurance with the car. He gifted the car.  And then subsequently when he wanted to retrieve items from the car when it had been impounded. And he referred to it as his vehicle. He wanted to know why his vehicle had been impounded when he didn't have drugs. He wanted to know and make sure that his vehicle was properly taken care of. He told the employee of the tow company, take care of my baby, she deserves it. That is a clear admission of his perspective that he owns this car. And I was honest in my statement, in my brief, in attributing those statements to the officers that testified to it. And if this court took that as a mixed characterization of a direct quote from him, that certainly wasn't the intention because it was clearly identified as his statements to the officer who was testifying to it. But his perception is it's his car. He pays insurance on it. His friends drive it. His name is emblazoned on it. He would show the officer Millis, when he was an employee still at the golf course, he called him over to show him all the customization of his car. And according to the record, it was the interior and the exterior. The way he, the way Agent Millis testified was, he did show me the vehicle and the interior. Two different things. Vehicle and interior. I don't recall the exact details, but all of the items were customized, and I remember him showing me the vehicle, comma, the interior, comma, and describing the features. I believe this record supports my argument that he also saw that customization on the vehicle. He said customization and the features. So that means that it was seen in prior to August 2012, because that's when Agent Millis testified he left employment at the golf course and he went to work for law enforcement. But we have the claimant testifying that she didn't even have it customized until the spring of 2013. So there was a lot of evidence, one, that Mr. Clark was actually the true owner. And as the true owner, he knowingly used the vehicle and committed an offense, which is substantial and is all we had to prove first for a forfeiture to be proper. But, and the trial court did find that, that finding is not against the manifest way to the evidence. But alternatively, the trial court recognized claimant's rights as a title holder to the vehicle and found that under that consideration, she knew or should have known that this was possible to happen. And arguments that were made today focused on what she did know. Did she know? Had someone told her? If someone had told her he was going to go rob a bank? If someone had told her? Okay, that's what she knew and what she didn't know. But the statute is knew or could have known. She knew that he had a significant history. He had at least, and it's in the record, five previous convictions. He, in December, pleaded guilty to an aggravated DUI for yet another DUI while driving with a revoked license. She admitted that she knew he hadn't had his license for several years. And she knew it was because of these repeated driving violations. And this court can take judicial notice of another case where we have much of the same parties. We have Mr. Clark who had a car. He gifted it to his grandmother in that case. He was caught driving it. He said, I didn't have permission to drive it. Grandmother said, I didn't have permission to drive it. He didn't have permission to drive it. Title's in my name. He doesn't have permission. Yes, it was housed at his car sometimes, but it's mine. And in that case, the forfeiture was not found to be appropriate. She got to keep the car, and this court affirmed it. And you can take judicial notice of your previous ruling to show that there is a pattern here where Mr. Clark will purchase cars. And remember, this is one of five cars that have been gifted to this claimant, four of which she testified she still owned at the time this one was seized. So he purchases cars. He gives them to his family members. The family members testify they're not housed at my place. They're at his place. But I keep the keys when he gets caught driving them, which repeatedly he does. He says, I didn't have permission to do it. They testify he didn't have permission to do it. Which case is this that you're talking about? 4080182. And again, it was an appeal in this court, which this court can't take judicial notice. Okay, did you cite to that? I did not. I did not, and I admit that. Okay. But the pattern is there. This is the pattern. He was the owner, and even if he wasn't, she knew or should have known, based on the significant history, that people who she gave the keys to, people she couldn't identify, quite likely were going to give him the keys and he was going to drive. And although she said she kept the keys with her at all times, he did have them the night he was driving the car. And it is true the record doesn't explain how he got them, but he had them. And I think that we did prove, and that the trial court's finding was not against the manifesto. I would ask this court to affirm. Thank you. I don't know how to start arguing against the quote, a pattern being there. This is the first time I've heard the argument, so I'm not going to address that. I don't think this has been anything before the trial court, anything in the appellate briefs concerning a pattern. So I don't know what I can do on that. The fact that he may have had a case that this court affirmed years back or something is not relevant as far as I can see to this issue. This case is now in a difficult position in the sense that the state now has judicially admitted to the three of you that there was no evidence to establish that West Main Street and Logan Street were public highways. So if the state admits that, the question becomes, can a trial court, after the state has closed its case, in response to an argument made for directed verdict, can the court then take judicial notice? And I don't think so. I really don't. I do think that the situation here and the suggestion that you can take judicial notice, you can on some peripheral matters, but not for an element of the case that the state admits wasn't proven. The whole case is distinguishable, and I've distinguished it in the brief. There's also a big difference, too, in terms of a couple things. I don't think Keon's view to how he viewed his car is imputable to Mom. I don't think that. It's like an agent and a principal. The authority is based upon the principal's actions, not the agent's. But here, too, I don't care what Keon thought. The issue is what Mom thought, what Mom did. What, in fact, should be imputable to her is not Keon's comments or Keon's thoughts. And the last thing I want to point out is counsel said that you should find that this vehicle could be used in the commission of crime. That's not what the statute says. The statute says very clearly, was to be used. The words was to be used in the commission of such an offense, in my view, sets forth a standard whereby there's some imminent knowledge that this was going to happen, that this was likely to be used, not some generic possible prospect that it could be used. So I think for all these reasons, when you look at the fact that courts have poor forfeitures, Counsel, let me ask you. Suppose we rule in your favor, so she keeps the car. Nothing changes as far as storing it at his place, and six months from now he does it again. Do you make the same argument six months from now on a forfeiture? Pragmatically, he's in jail right now for ten years, so that's not going to happen to him realistically.  I think your point's well taken. When he's actually now committed an offense during the time period when she has the vehicle, you're probably right. I would be hard-pressed to come back in front of the three of you and argue, well, you know, once again, Keyan really screwed up. You're probably right. I wouldn't come back, because I think that is... You're right. This is the first time when she's had ownership of this car when he's actually violated her trust. He may have screwed up a billion times before, but again, I think that generic fact doesn't give rise to the clear language it was to be used. So I agree with you, frankly. You're right. Thank you. Thank you, counsel. Thank you, madam. Goodbye.